The Thermo Chem Participating Companies consisting of: ABBOTT LABORATORIES, et al., Plaintiffs,

v.

THERMO CHEM, INC., Thomas Solvent Company, Thomas Solvent Company of Detroit, Inc., Thomas Solvent Company of Muskegon, Inc., Thomas Solvent of Indiana, Inc., TSC Transportation, Inc., and Richard E. Thomas, Defendants.

No. 1:89–CV–994.

United States District Court, W.D. Michigan, S.D.

Aug. 20, 1991.

---

Steven C. Kohl, Landman, Latimer, Clink & Robb, Muskegon, Mich., for plaintiffs.

John L. Collins, Foster, Swift, Collins & Smith, PC, Lansing, Mich., for defendants.

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiffs filed this action to recover response costs from defendants pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* The parties have filed cross-motions for partial summary judgment. Plaintiffs seek an order adjudicating defendants jointly and severally liable for contribution for all response costs incurred or which may be incurred at the Thermo Chem NPL site in Muskegon, Michigan. Defendants seek an order striking plaintiffs' request for attorney fees.

### *Facts*

Thomas Solvent Company owned and operated bulk industrial solvent storage and sale facilities in various locations in Michigan. Thermo Chem is a wholly owned subsidiary of Thomas Solvent Company. Thermo Chem operated an industrial waste solvent storage, recycling, incineration and disposal facility in Muskegon from 1967 through 1980. Thomas Solvent Company transported used or waste solvents to the Thermo Chem site.

The Thermo Chem site has been placed on the National Priorities List. The United States Environmental Protection Agency ("USEPA") identified plaintiffs as potentially responsible parties (PRP), and on November 7, 1987, plaintiffs entered into an administrative consent order with the USEPA to conduct a remedial investigation and feasibility study (RI/FS). Plaintiffs filed

this suit seeking contribution from the defendants for costs incurred by plaintiffs in remediating the Thermo Chem site.

In Count I plaintiffs seek contribution against Thomas Solvent Company and Thermo Chem, claiming that their acts or omissions caused or contributed to the release of hazardous substances at the Thermo Chem site. In Count II, plaintiffs seek contribution against Thomas Solvent Company of Detroit, Inc., Thomas Solvent Company of Muskegon, Inc., Thomas Solvent Company of Indiana, Inc., and TSC Transportation, Inc., under theories of fraudulent conveyance and successor liability. In Count III plaintiffs seek contribution against Richard Thomas under 42 U.S.C. §§ 9607 and 9613 based upon his alleged control over the Thomas Solvent companies.

### *Discussion*

Motions for Summary Judgment

 In evaluating motions for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–53, 106 S.Ct. 2505, 2511–13, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the opposing party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–80 (6th Cir.1989).

Liability of Thomas Solvent Company and Thermo Chem

Plaintiffs request judgment on the issue of the liability of Thomas Solvent Company

and Thermo Chem as owners, operators and/or transporters under 42 U.S.C. § 9607(a) for all response costs incurred at the Thermo Chem site.

■ A prima facie case of liability under section 107 requires that:

> (1) the site be a facility; (2) there be a release or threatened release of a "hazardous substance" from the site; (3) the release or threatened release caused the plaintiff to incur response costs; (4) the defendants are covered persons within Section 107(a); and (5) the responsive actions taken and costs incurred were consistent with the National Contingency Plan.

*B.F. Goodrich Co. v. Murtha,* 754 F.Supp. 960, 963–64 (D.Conn.1991).

Plaintiffs have come forward with sufficient evidence to make out a prima facie case of liability against Thomas Solvent Company and Thermo Chem under 42 U.S.C. § 9607(a).

Defendants Thomas Solvent Company and Thermo Chem have not come forward with any evidence that would indicate that there is a genuine issue of material fact for trial on the issue of Thomas Solvent Company and Thermo Chem's liability as owner operators or transporters. The only defense raised by these defendants is that they cannot be held liable under CERCLA because application of CERCLA in this case would constitute an impermissible retroactive application of law in violation of their right to due process of law.

■ The Sixth Circuit has already determined that retroactive application of CERCLA is not unconstitutional in *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1506 (6th Cir.1989), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990).

There being no genuine issue of material fact as to the liability of Thomas Solvent Company and Thermo Chem as owner operators and/or transporters, they are liable to plaintiffs for contribution as a matter of law.

### Offensive Collateral Estoppel

Plaintiffs request summary judgment as to the liability of defendants Thomas Solvent Company of Detroit, Inc., Thomas Solvent Company of Muskegon, Inc., Thomas Solvent of Indiana, Inc., and TSC Transportation, Inc. (the "spinoff corporations") and Richard E. Thomas on grounds of fraudulent conveyance and successor liability. Plaintiffs contend that offensive collateral estoppel should be applied to estop defendants from relitigating the liability issues already decided in an earlier case, *Kelley v. Thomas Solvent Co.,* 725 F.Supp. 1446 (W.D.Mich.1988).

Defendants contend that Richard E. Thomas should not be treated the same as the spinoff corporations for purposes of the collateral estoppel analysis. The Court will address the liability of Richard E. Thomas below. This portion of the opinion is limited to the spinoff corporations.

"Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant previously litigated unsuccessfully in another action against the same or a different party." *United States v. Mendoza,* 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571 n. 4, 78 L.Ed.2d 379 (1984).

■ The doctrine of collateral estoppel may be applied only if the following criteria have been satisfied:

> 1. the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
> 2. determination of the issue must have been necessary to the outcome of the prior proceeding;
> 3. the prior proceeding must have resulted in a final judgment on the merits; and
> 4. the party against whom estoppel is sought must have had full and fair opportunity to litigate the issue in the prior proceeding.

*Detroit Police Officers Association v. Young,* 824 F.2d 512, 515 (6th Cir.1987) (*quoted in United States v. Sandoz Pharmaceuticals Corp.,* 894 F.2d 825, 826–27 (6th Cir.1990)).

Defendants contend that collateral estoppel is inappropriate in this case because the first and third criteria have not been met.

### 1. *Identical Issues*

In the prior case the court held that Thomas Solvent Company created the spinoff corporations to avoid potential liability related to existing groundwater contamination in Battle Creek, and in so doing violated the Michigan Fraudulent Conveyance Act, MCL § 566.17. 725 F.Supp. at 1452–56. The court also held that the spinoff corporations were corporate successors and were liable for contribution under theories of successor liability. *Id.* at 1456–59.

In Count II of the instant complaint plaintiffs seek contribution from the same spinoff corporations under theories of fraudulent conveyance and successor liability.

Defendants claim that the present case does not raise the "precise issue" which was decided in the prior case because the prior ruling was that the transfer of assets was made to avoid liability arising from the alleged contamination of the Verona Well field in Battle Creek and had nothing to do with the alleged contamination at the Thermo Chem site in Muskegon.

The difference is illusory. The Michigan fraudulent conveyance act under which liability in the prior action was premised provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

M.C.L.A. § 566.17. The elements of the claim, as found in the prior action, were that Thomas Solvent Company is a person under the Michigan Act; that it made a conveyance; that it did so with actual intent to hinder, delay, or defraud creditors; and that plaintiffs are creditors under the Act. 725 F.Supp. at 1452.

The first three elements are precisely the same as the issues presented in the instant case. As to the fourth element, this court has already determined above that there is no question that plaintiffs are creditors of Thomas Solvent Company. Since the statute confers liability for fraud as to both present and future creditors, the precise issue of fraudulent conveyance raised in the present case was raised and actually litigated in the prior proceeding.

Moreover, the court in the prior action found the defendant spinoff corporations liable as successor corporations. Defendants have not raised any arguments, and this Court is aware of no basis for finding that this issue is not precisely the same as the issue raised in the present action.

### 2. *Finality*

Defendants' second basis for contesting the application of collateral estoppel is the fact that the decision on the issues of fraudulent conveyance and successor liability was not a final judgment which was appealable under 28 U.S.C. § 1291; it was not certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and the parties in the prior action have reached a settlement agreement rendering the decision moot.

Section 13 of the *Restatement (Second) of Judgments* provides:

> For purposes of issue preclusion ..., "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

The official comments to § 13 explain that the criteria for determining finality for purposes of issue preclusion are not as strict as they are for claim preclusion. Even though there is no final judgment in the strict sense, the court may regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment:

> Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the

other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

*Restatement (Second) of Judgments* § 13 comment g (1980). Illustration 3 following § 13 suggests that a finding of liability in a bifurcated trial is sufficiently final to have collateral estoppel effect. *See also, McLendon v. Continental Group, Inc.,* 660 F.Supp. 1553, 1562 (D.N.J.1987) (liability determination sufficiently final despite remand for damages).

Finality for collateral estoppel is not the same as that required to appeal under 28 U.S.C. § 1291. *Gilldorn Savings Association v. Commerce Savings Association,* 804 F.2d 390, 393 (7th Cir.1986). In *American Postal Workers Union Columbus Area Local v. United States Postal Service,* 736 F.2d 317, 319 (6th Cir.1984), the Sixth Circuit held that even though there was no final judgment, "such a judgment is not required so long as there has been a final decision with respect to the issue to be given preclusive effect (in this case the motion to dismiss)." As noted by Judge Friendly in *Zdanok v. Glidden Co., Durkee Famous Foods Division,* 327 F.2d 944, 955 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), "finality" in the context of collateral estoppel "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."

In *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149 (5th Cir.1982), *cert. denied,* 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1983), a final judgment was not entered in the prior action because it was resolved by settlement after the court withdrew and set aside its findings of fact and conclusions of law. Nevertheless, the court held that issues of fact adjudicated adversely to the defendant in the prior action could be applied offensively against the defendant in the second action where such application of offensive collateral estoppel was not unfair. *Id.* at 1191–92.

Similarly, in *Aetna Casualty & Surety Co. v. Jeppesen & Co.,* 440 F.Supp. 394, 399–405 (D.Nev.1977), *vacated on other grounds,* 642 F.2d 339 (9th Cir.1981), the district court held that a plaintiff can invoke offensive collateral estoppel on the issue of defendant's liability when a prior case had been fully litigated as to liability but settled before trial on the issue of damages and entry of final judgment.

A trial judge should not allow the use of offensive collateral estoppel where it would be unfair to a defendant. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Examples of unfair application of offensive collateral estoppel are if defendant had little incentive to defend vigorously in the first suit, if the judgment relied upon is itself inconsistent with one or more previous judgments in favor of the defendant; or if the second action affords the defendant procedural opportunities unavailable in the first action. *Parklane,* 439 U.S. at 330–31 (check pages), 99 S.Ct. at 651–52; *Chemetron Corp.,* 682 F.2d at 1189.

The Court finds that the decision in the prior action is sufficiently firm to be accorded preclusive effect. The liability of defendant spinoff corporations was fully litigated and firmly established in a well-reasoned opinion. There was nothing tentative about the decision. Moreover, issue preclusion in this action would not be unfair to the spinoff corporations. They had every incentive, given their potential liability, to litigate the prior case vigorously. The prior liability determination is not inconsistent with any previous judgments in favor of defendants and the procedural opportunities in both cases are the same. It would be a waste of the Court's and the parties' resources to relitigate the issue of the liability of the spinoff corporations. Accordingly, this Court finds that defendant spinoff corporations are jointly and severally liable to plaintiffs for contribution.

Richard E. Thomas

█ Plaintiffs contend that offensive collateral estoppel should also be applied to

establish the liability of defendant Richard E. Thomas for contribution under theories of fraudulent conveyance and successor liability.

Defendants correctly note that neither in *Kelley* nor in the present case are there any allegations in the complaints that Richard E. Thomas is liable under theories of fraudulent conveyance or successor corporation liability. In both cases plaintiffs' liability claim against Richard E. Thomas was as the "owner" or "operator" of the facility.

*Kelley* appears to treat Richard E. Thomas and the spinoff corporations the same. "All six defendants here will be referred to as 'defendants'." 725 F.Supp. at 1148. However, there was no express finding in *Kelley* that Richard E. Thomas was liable under theories of fraudulent conveyance and successor liability.

The Court cannot determine from the evidence presented whether the issue of Richard E. Thomas' liability under theories of fraudulent conveyance and successor liability was actually litigated in the prior action. Accordingly, application of offensive collateral estoppel as to Richard E. Thomas on these theories does not appear to be warranted. Accordingly, plaintiffs' motion for summary judgment, insofar as it relates to the liability of Richard E. Thomas, must be denied.

Attorney Fees

■ Defendants claim they are entitled to partial summary judgment on plaintiffs' request for attorney fees because as a matter of law such expenses are not recoverable under CERCLA.

CERCLA does not expressly address the award of attorney fees to a private party. The statute provides at 42 U.S.C. § 9613(f)(1) that private parties may bring an action against other potentially responsible parties for recovery of response costs. The term "response" is defined to include removal and remedial action and "enforcement activities related thereto". 42 U.S.C. § 9601(25). Plaintiffs claim that this litigation comes within the phrase "enforcement activities related thereto" and that attorney fees are "necessary costs of response incurred" pursuant to 42 U.S.C. § 9607(a)(4)(B).

The Sixth Circuit has not addressed the issue of whether the response costs recoverable under § 9607(a)(4)(B) include a private party's litigation expenses, and there is a split among the district courts that have addressed the issue.

The only circuit court to have addressed the issue has concluded that private parties may recover attorney fees. *General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1990). The court acknowledged that the statute does not explicitly allow attorney fees, but nevertheless determined that "it would strain the statutory language to the breaking point to read them out of the 'necessary costs' that section 9607(a)(4)(B) allows private parties to recover." *Id.* at 1422. *See also, Bolin v. Cessna Aircraft Co.,* 759 F.Supp. 692, 710 (D.Kan.1991); *Gopher Oil Co. v. Union Oil Co.,* 757 F.Supp. 998, 1007 (D.Minn. 1991); *Pease & Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945 (C.D.Cal. 1990).

Although the Court might agree that it would be good public policy to allow private parties to recover their attorney fees in cost recovery actions, this Court does not agree that an attorney fees provision for private recovery actions can be read into the CERCLA statute.

■ The American rule is that each party in a lawsuit ordinarily bears its own attorneys' fees unless there is express statutory authorization to the contrary. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (citing *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

There is no question that the federal government is authorized to recover its attorney fees pursuant to CERCLA. *R.W. Meyer,* 889 F.2d at 1503. The statutory language clearly supports such recovery. 42 U.S.C. § 9607(a) authorizes the government to recover *all* costs of removal or

remedial action incurred by the government. "Removal" is broadly defined at 42 U.S.C. § 9601(23), and includes reference to the following:

> [T]he President may undertake such planning, *legal*, fiscal, economic, engineering, architectural, and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions, *to recover the costs thereof*, and to enforce the provisions of this chapter.

42 U.S.C. § 9604(b)(1) (emphasis added).

Section 310 of CERCLA, 42 U.S.C. § 9659, provides for citizens suits to supplement administrative action and aid in attacking CERCLA violators. *Regan v. Cherry Corp*, 706 F.Supp. 145, 149 (D.R.I. 1989). This section explicitly grants courts the right to award costs, including reasonable attorney fees. 42 U.S.C. § 9659(f).

In light of the statutory reference to the government's right to recover attorney fees and the explicit award of attorney fees to the prevailing party in citizens' suits, the silence of Congress with respect to recovery of attorney fees in private cost recovery actions is conspicuous. *See, In re Hemingway Transport, Inc.*, 126 B.R. 656, 663 (D.Mass.1991); *United States v. Hardage*, 750 F.Supp. 1460, 1511 (W.D.Okla.1990); *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 708 (D.N.J.1988).

The prevailing rule is that attorney's fees are not recoverable as response costs in recovery actions brought by private litigants. *New York v. SCA Services, Inc.*, 754 F.Supp. 995, 1000 (S.D.N.Y.1991). The rationale, as noted in *Regan*, is that comprehensive amendments were made to CERCLA under the Superfund Amendments and Reauthorization Act of 1986 (SARA). "If Congress had intended to permit citizens seeking response costs to recover their attorney fees, it would simply have amended § 107 to allow the recovery of these litigation costs." 706 F.Supp. at 149. *See also, SCA Services*, 754 F.Supp. at 1000.

This Court will not create a right to recovery of attorney fees where Congress has not expressly stated such to exist. *T & E Industries*, 680 F.Supp. at 708. Accordingly, defendants' motion for partial summary judgment to strike the portions of plaintiffs' complaint which request recovery of attorney fees must be granted.

### Conclusion

For the reasons stated herein, plaintiffs' motion for partial summary judgment is granted as to defendants Thermo Chem, Inc., Thomas Solvent Company, Thomas Solvent Company of Detroit, Inc., Thomas Solvent Company of Muskegon, Inc., Thomas Solvent of Indiana, Inc., and TSC Transportation, Inc., and denied as to defendant Richard E. Thomas. Defendants' motion for partial summary judgment is granted.