**UNITED STATES of America and the State of New York, Plaintiffs,**

v.

**ALCAN ALUMINUM CORPORATION, et al., Defendants.**

Nos. 87–CV–920, 91–CV–1132.

United States District Court,
N.D. New York.

May 11, 1999.

United States Department of Justice, Environmental & Natural Resources Div., Washington, D.C. (Lois J. Schiffer, AAG, Steven R. Baer, AAG, Henry Friedman, AAG, Daniel Beckhard, AAG, of counsel), for U.S.

Dennis C. Vacco, Attorney General, New York State Department of Law, The Capitol, Albany, NY (David A. Munro, AAG, Eugene Martin–Leff, AAG, Robert E. Hernan, AAG, of counsel), for State of New York.

Alcan Aluminum Corporation, Mayfield Heights, OH (Lawrence Salibra, Elisa P. Pizzino, of counsel), for Alcan.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

### A. Procedural History

The United States of America and the State of New York (collectively, the "government") initiated this action on July 10, 1987, against 83 business entities to recover response costs pursuant to section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 (as amended), in connection with the clean-up costs of a hazardous waste site formerly owned by Pollution Abatement Services of Oswego, Inc. ("PAS"). Shortly after commencement, the government entered into a consent decree with 82 of these defendants, recovering $9.1 million. The suit proceeded against the lone holdout, Alcan Aluminum Corporation ("Alcan"), for the remaining $3.2 million of unrecovered costs. Alcan thereafter filed a third-party complaint seeking contribution from Cornell University ("Cornell").

Following discovery, the Court granted summary judgment in favor of the government, holding Alcan jointly and severally liable for cleanup costs at PAS. The Court further held that Alcan had failed to meet its burden to establish that the harm at PAS was divisible, and awarded the government approximately $4 million in accumulated response costs. The Court also

granted Alcan's motion for summary judgment seeking contribution from Cornell. The Court then held a hearing to determine the fair share of Cornell's liability to Alcan. Adopting the six-factor fair share allocation test set forth in *United States v. R.W. Meyer, Inc.*, 932 F.2d 568 (6th Cir. 1991), the Court ruled that Cornell was responsible for six percent of the response cost recovered by the government from Alcan and therefore awarded Alcan $310,-540.92. An amended final judgment was entered on May 29, 1992.

On appeal, the Second Circuit affirmed the granting of summary judgment with respect to the imposition of liability against Alcan for response costs at PAS, and the finding that Alcan was entitled to contribution from Cornell at PAS. But it reversed the Court's finding that the government was entitled to summary judgment against Alcan on the question of the divisibility of the harm, holding that Alcan had put forth sufficient evidence to establish a factual issue whether the harm caused at the PAS was capable of apportionment of liability. *United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir.1993) ("*Alcan*").

On remand, the government moved for summary judgment against Alcan on the issues of (1) liability in the so-called *Alcan–Fulton* case (91–CV–1132), and (2) apportionment of liability with regards to the *Alcan–PAS* case (87–CV–920).[1] Alcan opposed the government's motion for summary judgment, and cross-moved for summary judgment on the same issues.

In a Memorandum—Decision & Order dated October 28, 1996, this Court granted the government's motion for summary judgment with respect to liability in *Alcan–Fulton*, but reserved decision on the issue of apportionment of liability pending a rebriefing by the parties. *United States v. Alcan Aluminum Corp.*, 1996 WL 637559, at *2–*4 (N.D.N.Y. Oct.28, 1996).

---

1. This case was consolidated with Alcan–Pas by an Order of the Court dated December 1, 1993. The United States brought this action

to recover clean-up costs of hazardous substances transported and disposed of at Fulton.

After rebriefing, the Court denied the cross-motions for summary judgment, finding that apportionment of liability could not be made because questions of material fact remained as to what hazardous substances were contained in Alcan's oil emulsion and whether the metals could have concentrated. *United States v. Alcan Aluminum Corp.*, 1997 WL 727506 (N.D.N.Y. Aug.20, 1997).

Alcan now moves to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), asserting that the retroactive application of CERCLA is unconstitutional in light of the Supreme Court's decision in *Eastern Enterprises v. Kenneth S. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998).

### B. Facts

From 1970 to 1977, various chemical waste materials were received for disposal or treatment at PAS. As a result of PAS operations, the site's surface became contaminated by hazardous substances because of wastes leaching from drums, lagoons being overtopped and surface runoff. During the 1970 through 1977 period, Alcan used PAS for the disposal or treatment of 4.6 million gallons of oil emulsion.

In the late 1970s, the government began undertaking response measures at PAS. In 1989, the United States also undertook response measures at Fulton. This lawsuit followed to recover the response costs incurred in connection with the clean-up of both sites.

### II. DISCUSSION

Presently before the Court is Alcan's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). When deciding a motion to dismiss, a court must accept as true all factual allegations in the complaint and construe them favorably to plaintiff. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The court should not dismiss on a Rule 12(b)(6) motion unless it appears clear that the plaintiff cannot in any way establish a set of facts to sustain her claim which would permit relief. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

In a nutshell, Alcan asserts that in light of the Supreme Court's recent decision in *Eastern Enterprises*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), dismissal is required "because retroactive application of CERCLA constitutes an unconstitutional taking, denial of substantive due process, and civil penalty, and thus, violates the *Ex Post Facto* provisions of the United States Constitution." As Alcan puts it, *Eastern Enterprises* "effectively overruled all decisions by lower courts holding that CERCLA could be constitutionally applied retroactively."

Alcan's broad interpretation of *Eastern Enterprises* and its impact in the CERCLA context is incorrect. *Eastern Enterprises* presented a challenge under the Due Process and Takings Clauses of the Consutitution to the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"). In a plurality opinion, four of the Justices (the Chief Justice and Justices O'Conner, Scalia and Thomas) held that the Coal Act violated the Takings Clause of the Fifth Amendment. *Id.* at 2137–53. Justice Kennedy's concurrence with the plurality's judgment that the Coal Act was unconstitutional provided the fifth vote to strike down the Coal Act. Justice Kennedy disagreed, however, with the plurality's Taking's Clause analysis, finding instead that the Coal Act ran afoul of due process. *Id.* at 2154–60 (Kennedy, J., concurring in the judgment and dissenting in part). In the dissenting opinion, the four remaining Justices found not only that the Coal Act was not subject to a Takings Clause analysis but also that it did not violate due process. *Id.* at 2161–68 (Breyer, J., joined by Stevens, Souter, and Ginsburg, J.J., dissenting).

## A. The Takings Clause

Applying the Takings Clause analysis set forth in the plurality's decision in *Eastern Enterprises*, Alcan asserts that, as applied, imposing CERCLA liability in this case constitutes an unconstitutional taking.

In making this argument, however, Alcan ignores the threshold question whether the plurality's Takings Clause analysis is entitled to precedential force.

■ While the plurality relied on the Takings Clause to invalidate the Coal Act, five Justices rejected the plurality's view that the Takings Clause applies to "ordinary liabilit[ies] to pay money." *Eastern Enterprises*, 118 S.Ct. at 2162. Thus, while four Justices embraced a Takings Clause analysis, five Justices rejected it. Under such circumstances, the plurality's Taking's clause analysis is not binding precedent. *See Hertz v. Woodman*, 218 U.S. 205, 213–14, 30 S.Ct. 621, 54 L.Ed. 1001 (1910) ("The principles of law involved not having been agreed upon by a majority of the court sitting prevents the case from becoming an authority for the determination of other cases, either in [the Supreme Court] or in inferior courts."); *see also Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (stating that plurality view that does not command majority is not binding precedent); *United States v. Pink*, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942) ("While it was conclusive and binding upon the parties as respects that controversy the lack of an agreement by a majority of the Court on the principles of law involved prevents it form being an authoritative determination for other cases."); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 66, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("The [*Union Gas* ] decision has, since its issuance, been of questionable precedential value, largely because a majority of the Court expressly disagreed with the rationale of the plurality."); *North v. Superior Court*, 8 Cal.3d 301, 307–08, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972).

■ Assuming the plurality's Taking's Clause analysis is entitled to some persuasive precedential effect, see *Texas*, 460 U.S. at 737, 103 S.Ct. 1535, its application to the facts of this case yields the finding that CERCLA passes Takings Clause muster. According to the plurality, "the process of evaluating a regulation's constitutionality [under the Takings Clause] involves an examination of the 'justice and fairness' of the government action." *Eastern Enterprises*, 118 S.Ct. at 2135. That inquiry is fact intensive and requires the evaluation of three particularly significant factors: (1) the economic impact of the regulation; (2) its interference with reasonable investment-backed expectations; and (3) the character of the governmental action. *Id.*

In this case, Alcan's position is that because it did not cause or contribute to the environmental problems at PAS or Fulton, CERCLA liability "as applied" is impermissibly "severe" and "disproportionate."

The flaw in this argument is that Alcan has no basis to make the factual assumption that it did not contribute to the environmental harms at PAS or Fulton. The fact is that this issue is in dispute. *Alcan*, 1997 WL 727506, at *4 (denying summary judgment on the issue of apportionment of liability because material issues of fact remained whether Alcan's oil emulsion contributed to the response or clean-up costs). As a result, Alcan fails to recognize that it will be provided the opportunity to limit (perhaps even to zero) the scope of its liability at the approaching proceeding for the apportionment of liability. If Alcan succeeds in limiting its liability, the assumptions it now makes regarding the scope of its liability underlying the constitutional challenge will be incorrect. If Alcan fails, then this will contradict Alcan's assertion that there is no relationship between its waste and the environmental harms being remediated. In either case, liability will not be "severe" or "disproportionate" in the sense that Alcan now argues.

Examining the factors more particularly, the potential economic impact of CERCLA liability on Alcan is approximately $5 million dollars. Although a $5 million liability is not insubstantial, it is far less than the $50 to $100 million estimated liability in *Eastern Enterprises*. As to Alcan's reasonable investment-backed expectations, it is acknowledged that retroactive legislation "presents problems of unfairness because it can deprive citizens of legitimate expectations and upset settled transactions." *Id.* at 2135 (citing *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). At the same time, it must be recognized that CERCLA liability has not been imposed on Alcan for no reason; rather, it has resulted from Alcan's conduct in disposing of waste where hazardous substances have been found. Consequently, Alcan's liability is predicated on the link between its waste disposal activities and the environmental harms caused at PAS and Fulton. Compare that to *Eastern Enterprises* non-participation in the conduct that created the problem, i.e., the funding crisis caused by industry commitments to expanded benefits. Eastern had a reasonable expectation that its obligations were satisfied when it paid royalties pursuant to the early agreements it joined. Thus, the plurality in *Eastern Enterprises* emphasized that the "Coal Act's scheme for allocation of Combined Fund premiums is not calibrated either to Eastern's past actions or to any agreement." *Eastern Enterprises*, 118 S.Ct. at 2136. By contrast, CERCLA liability triggers current and future liabilities on the basis of past actions.

Furthermore, in the same way that *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) upheld retroactive liability against Coal operators for black lung disease, retroactive liability under CERCLA is appropriate because it concerns environmental harms connected to the actions of parties like Alcan. Just as it was reasonable in *Turner Elkhorn* to impose retroactive liability for unforseen diseases relating to mining, it is reasonable here to impose retroactive liability for possibly unforseen costs of responding to environmental harms resulting from a party's disposal of waste.

Lastly, the nature of the government action in enacting CERCLA is not unusual. Suffice it to say, for the reasons discussed, that CERCLA liability does not impose liability absent a basis.

For all these reasons, Alcan's assertion that CERCLA runs afoul of the Takings Clause is without merit.

### B. Due Process Clause

Alcan next contends that *Eastern Enterprises* compels the finding that CERCLA violates due process. Only brief comment is needed.

First, because the plurality held that the Coal Act constituted an unconstitutional taking, it found it unnecessary to address the due process claim. *Eastern Enterprises*, 118 S.Ct. at 2153. Thus, contrary to Alcan's belief, the due process analysis was not altered by the plurality in *Eastern Enterprises*.

Second, inasmuch as Alcan attempts to patch together the opinions in *Eastern Enterprises* to bolster its due process claim, its attempts are unpersuasive. The District of Columbia Circuit recently rejected a similar attempt in *Association of Bituminous Contractors v. Apfel*, 156 F.3d 1246, 1254–55 (D.C.Cir.1998), stating that:

> Justice Kennedy's concurrence in the judgment is of no help in appellant's efforts to cobble together a due process holding from *Eastern Enterprises'* fragmented parts. We have previously held that the rule of *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), under which the opinion of the Justices concurring in the judgment on the "narrowest grounds" is to be regarded as the Court's holding, does not apply unless the narrowest opinion

represents a "common denominator of the Court's reasoning" and "embod[ies] a position implicitly approved by at least five Justices who support the judgment." *King v. Palmer,* 950 F.2d 771, 781 (D.C.Cir.1991). Justice Kennedy's due process analysis clearly does not meet this standard because he alone was willing to invalidate economic legislation on the ground that it violated the Due Process Clause. And, as should be obvious, Justice Kennedy's due process reasoning can in no sense be thought a logical subset of the plurality's takings analysis. In short, the government is correct in stating that the only binding aspect of *Eastern Enterprises* is its specific result—holding the Coal Act unconstitutional as applied to Eastern Enterprises.

This reasoning is persuasive. Alcan's due process claim is, therefore, governed by the settled rule that economic legislation enjoys a " 'presumption of constitutionality' that can be overcome only if the challenger establishes that the legislature acted in an arbitrary and irrational way." *Id.* at 1254 (citing *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). Applying this rule, I have no difficulty in joining the overwhelming number of courts that have consistently held that the retroactive application of CERCLA has a rational basis. As aptly explained in *United States v. Northeastern Pharmaceutical and Chemical Co.,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987):

> Cleaning up inactive and abandoned hazardous waste disposal sites is a legitimate legislative purpose, and Congress acted in a rational manner in imposing liability for the cost of cleaning up such sites upon those parties who created and profited from the sites and upon the chemical industry as a whole. We hold retroactive application of CERCLA to impose liability upon responsible parties for acts committed before the effective date of the statute does not violate due process.

810 F.2d at 734 (internal citations omitted); *accord O'Neil v. Picillo,* 883 F.2d 176 (1st Cir.1989), *cert. denied sub nom., American Cyanamid v. O'Neil,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990); *United States v. Monsanto Co.,* 858 F.2d 160, 173–74 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *United States v. Iron Mountain Mines, Inc.,* 812 F.Supp. 1528, 1544–46 (E.D.Cal.1992); *United States v. Kramer,* 757 F.Supp. 397, 428–32 (D.N.J.1991); *United States v. Hooker Chemicals & Plastics Corp.,* 680 F.Supp. 546, 556 (W.D.N.Y.1988).

For these reasons, Alcan's due process claim is without merit.

### C. Ex Post Facto Clause

[redacted] Lastly, Alcan summarily asserts that CERCLA is a civil penalty, and thus violates the constitutional prohibition against *ex post facto* laws. Again, I disagree. Liability for response costs under CERCLA is not penal under the *Ex Post Facto Clause. See, e.g., Monsanto,* 858 F.2d at 174–75; *Iron Mountain Mines, Inc.,* 812 F.Supp. at 1545; *Kramer,* 757 F.Supp. at 431; *United States v. Conservation Chem. Co.,* 619 F.Supp. 162, 214 (W.D.Mo.1985).

## III. CONCLUSION

For the reasons stated above, Alcan's motion to dismiss is denied.

**IT IS SO ORDERED.**