**FRANKLIN COUNTY CONVENTION FACILITIES AUTHORITY, Plaintiff,**

v.

**AMERICAN PREMIER UNDERWRITERS, INC., et al., Defendants.**

**No. C2–94–1050.**

United States District Court, S.D. Ohio, Eastern Division.

Aug. 6, 1999.

hold defendant, American Premier Underwriters, Inc. ("APU") liable for costs relating to the cleanup following an alleged release of hazardous substances on property now owned by the CFA. The parties have stipulated that APU is the successor of several railroads that, between 1864 and 1973, owned property on which a large wooden box was buried. In 1990, the box was uncovered and split open by the CFA in the course of construction activity. Consequently, a portion of the contents of the box was released into the environment. The CFA claims that APU is liable under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9601, for the cleanup costs which it has incurred.

In addition to denying liability under the statute, APU has also asserted that imposition of CERCLA liability for preenactment conduct is unconstitutional. Specifically, APU contends that application of CERCLA under such circumstances would violate APU's substantive due process rights under the Fifth Amendment.

The United States of America was granted leave by this Court to intervene for the sole purposes of defending the constitutionality of CERCLA. All parties have briefed the constitutional question and the matter is ripe for determination.

Richard A. Frye, Chester, Willcox & Saxbe, Columbus, OH, John A. Gleason, Benesch, Friedlander, Coplan and Aronoff, Columbus, OH, for Plaintiff.

Michael C. Beckhard, Sr. Atty., U.S. Dept. of Justice, Washington, DC, for U.S., Intervenor.

Michael Lawrence Cioffi, Cincinnati, OH, Pierce Edward Cunningham, Garry & Garry, Cincinnati, OH, for Defendants.

## OPINION AND ORDER

SARGUS, District Judge.

In this action, Franklin County Convention Facilities Authority ("CFA"), seeks to

## I.

Defendant APU relies upon the recent Supreme Court decision in *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) in support of its claim that application of CERCLA to the facts of this case represents an unconstitutional deprivation of due process. Prior to the decision in *Eastern Enterprises,* a great number of cases upheld the constitutionality of CERCLA with regard to imposition of liability based upon conduct or activities which occurred before enactment of the statute. *See, e.g., U.S. v. Northeastern Pharmaceutical & Chemical Co.,* 810

F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *United States v. Monsanto Co.,* 858 F.2d 160 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *United States v. Iron Mountain Mines, Inc.,* 812 F.Supp. 1528 (E.D.Cal.1992); *Abbott Laboratories v. Thermo Chem., Inc.,* 790 F.Supp. 135 (W.D.Mich.1991); *United States v. Kramer,* 757 F.Supp. 397 (D.N.J.1991); *Kelley v. Thomas Solvent Co. (Thomas Solvent III),* 714 F.Supp. 1439 (W.D.Mich.1989); *O'Neil v. Picillo,* 682 F.Supp. 706, 729 (D.R.I. 1988), *aff'd,* 883 F.2d 176 (1st Cir.1989), *cert. denied sub nom. American Cyanamid Co. v. O'Neil,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990); *United States v. Hooker Chemicals & Plastics Corp.,* 680 F.Supp. 546 (W.D.N.Y.1988); *United States v. Conservation Chemical Co.,* 619 F.Supp. 162 (W.D.Mo.1985).

In *Eastern Enterprises,* a plurality of the Supreme Court found that the Coal Industry Retiree Health Benefit Act ("Coal Act"), 26 U.S.C. § 9701, *et. seq.* was unconstitutional. The Coal Act, passed in 1992, represented an attempt by Congress to stabilize funding and provide benefits for retirees from the nation's coal mines. Since 1946, agreements between the United Mine Workers of America and various coal operators provided retirement and health insurance benefits to retirees. Over time, a number of employers began to withdraw from the benefit plans negotiated by the United Mine Workers of America, leaving behind remaining signatories to absorb the increasing costs of health care and retirement benefits.

In response, Congress passed the Coal Act of 1992 in order to stabilize funding and provide for benefits to retirees. Under the Act, the Commissioner of Social Security was directed to assign retirees to various coal operators under the following allocation formula: first, to the most recent signatory to the 1978 collective bargaining agreement or a subsequent employer covered by the agreement who had employed the retiree for at least 2 years; second, to the most recent signatory to the 1978 agreement or a subsequent employer covered by the agreement who has employed the retiree in the coal industry; and finally, to the signatory operator that employed the retiree in the coal industry for the longest period of time prior to 1978.

Eastern Enterprises left the coal industry in 1965, after transferring its coal mining operations to a subsidiary. Ultimately, the subsidiary was sold to the Peabody Holding Company, Inc. in 1987. Under the operation of the formula set forth above, the Commissioner of Social Security assigned over 1000 retired miners to Eastern Enterprises, Inc. By the terms of the statute, Eastern Enterprises would then have been responsible for making payments in excess of $50 million to pay for retirees who last worked for the company prior to 1964.

While five of the justices agreed that the Coal Act of 1992 was unconstitutional, only four justices concurred that the Act was passed in violation of the Takings Clause of the Fifth Amendment which states that private property shall not be taken "for public use, without just compensation."

While the plurality opinion noted that the imposition of an assessment on Eastern Enterprises was not a classic taking in which the government directly appropriates private property for its own use, four members of the Court nonetheless found that the imposition of "severe retroactive liability" which the limited class of parties could not have anticipated, renders such legislation unconstitutional as an unlawful taking in violation of the Fifth Amendment.

Only four of the justices concluded that the Coal Act of 1992 represented an unconstitutional taking of private property via a regulatory enactment. Justice Kennedy, while concurring in the judgment, disagreed that the Coal Act represented a violation of the Takings Clause of the Fifth

Amendment. Instead, under Justice Kennedy's analysis, the Coal Act was unconstitutional under the Due Process Clause of the Fifth Amendment. In Justice Kennedy's view, the retroactive legislation changing legal consequences of transactions long closed deprived Eastern Enterprises of "due process protection for property . . . against retroactive laws of great severity." *Eastern Enterprises v. Apfel* at 2159.

■ Justice Breyer, in a dissent joined by three other members of the Court, evaluated the constitutionality of the Coal Act through an analytical framework not dissimilar to the standard adopted by the plurality opinion. While objecting to the conclusion reached by the majority, Justice Breyer did not disagree with Justice O'Connor's analysis that legislation is unconstitutional ". . . if it imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties experience." *Id.* at 2149. In this Court's view, the standard articulated by Justice O'Connor in the plurality opinion is the appropriate framework under which the defendant's challenge to the constitutionality of CERCLA as applied to the facts of this case should be evaluated.

The Court also notes that, since the Supreme Court's decision in *Eastern Enterprises*, two district courts have addressed similar constitutional challenges to those made by the defendants herein. *See United States v. Alcan Aluminum Corp.*, 49 F.Supp.2d 96, 98 (N.D.N.Y.1999); *United States v. Vertac Chemical Corp.*, 33 F.Supp.2d 769, 784 (E.D.Ark.1998). In both cases, the district court upheld the constitutionality of the application of CERCLA to impose pre-enactment liability.

## II.

Under Justice O'Connor's formulation, this Court must first assess the extent of the economic impact of CERCLA liability upon APU. The remedial costs of the cleanup involved in the case at bar are in excess of $300,000.00. While the parties vigorously contest whether the record is sufficiently developed for the Court to find additional, actual or potential costs chargeable to the defendant under CERCLA, the parties do not dispute that APU, as a successor entity to a series of railroads, including the former Penn Central Railroad, at one time owned large tracts of rail lines and facilities which in many cases contained hazardous materials for which remediation will be required. In light of this fact, the absence of specificity as to the extent of potential financial exposure CERCLA may cause to APU is irrelevant. The Court concludes that CERCLA does in fact impose significant economic costs upon APU.

The Court next analyzes the extent to which liability under CERCLA interferes with APU's reasonable investment backed expectations. It is in this context that the Court is of the view that liability under CERCLA is fundamentally different from liability under the Coal Act of 1992. In this case, CERCLA liability is tied directly to the past actions of responsible parties. The CFA seeks to hold APU liable for acts which were allegedly performed by APU's legal predecessors. In other words, APU is not a party upon whom liability may be imposed based on the acts or promises of an unrelated third party. In contrast, in *Eastern Enterprises*, further, Justice O'Connor noted that the Coal Act of 1992 ". . . singles out certain employers to bear a burden . . . unrelated to any commitment that the employers made or to any injury they caused . . ." *Id.* at 2153.

Here, APU may only be liable for hazardous waste disposed of by its successor corporations. While the predecessor corporations may not have anticipated subsequent liability for such activities conducted in the 19th century, the fact that CERCLA liability may arise for acts performed long ago does not, in and of itself, render the legislation unconstitutional. At common

law, parties have long been held liable for the spreading of nuisance or harmful substances, long before enactment of CERCLA.

Further, in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), cited with approval in *Eastern Enterprises, supra,* the Supreme Court upheld the constitutionality of the Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 932 *et. seq.,* which imposed liability for pneumoconiosis, or black lung, on coal mine operators. In responding to the operators claim that legislation which retroactively imposes liability is unconstitutional, the Court stated:

> "We find, however, that the imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor ..." *Turner Elkhorn,* at 2893.

As to the third standard articulated in *Eastern Enterprises,* this Court finds that the liability to be imposed is not "substantially disproportionate to the parties' experience." *Eastern Enterprises,* at 2149. To the contrary, the liability is precisely proportionate to the remediation costs incurred in cleaning up the site.

With respect to the instant matter, the application of CERCLA, enacted in 1980, to clean up costs relating to the spillage of the contents of the wooden box which was installed before 1901 may at first blush appear to be the precise type of retroactive law-making prohibited by *Eastern Enterprises, supra.* A closer analysis of the operation of CERCLA validates a contrary view.

In this case, the defendant's predecessors sold the real property containing a latent, hazardous condition. Years after the box was placed on the realty and later covered with earth, the structure leaked and caused an environmental condition which had to be remediated. In effect, as applied in this case, CERCLA determines which party—an innocent landowner or the lineal successor of the party creating the hazard—should pay for the cleanup. It is within this context that the application of CERCLA to pre-enactment conduct survives constitutional scrutiny.

Further, for the CFA to recover in this case, it must establish that it is an "innocent landowner," which, under CERCLA, requires a showing that it used all reasonable inquiry, including core-sampling in this case, before purchasing the property. 42 U.S.C. § 9601(35)(A) and 42 U.S.C. § 9607(b)(3). Even after such a finding, CERCLA permits an equitable reallocation of costs in light of case specific circumstances. 42 U.S.C. § 9613(f).

In this light, it is worth recalling:

> "We are unwilling to assess the wisdom of Congress' chosen scheme by examining the degree to which the 'cost savings' enjoyed by operators in the pre-enactment period produced 'excess' profits, or the degree to which the retrospective liability imposed on the early operators can now be passed on to the consumer. It is enough to say that the Act approaches the problem of a cost spreading rationally; whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension." *Id.* at 2894.

■ While the Due Process Clause is implicated in retroactive legislation as found in *Eastern Enterprises, supra,* in the absence of constitutional infirmity, it is for Congress to determine the wisdom of economic legislation. The Court concludes that the cost allocation set forth in CERCLA is a rational approach to a valid congressional objective which is permissible under the Fifth Amendment to the Constitution.

### III.

■ Based upon the foregoing, this Court finds that the imposition of CERCLA liability for pre-enactment conduct, as

applied in this case, is not in violation of the defendants' Fifth Amendment right of Due Process of law.

**IT IS SO ORDERED.**