**UNITED STATES of America, State of New York, Plaintiffs–Appellees,**

v.

**·ALCAN ALUMINUM CORPORATION,· Defendant–Appellant.**

**Docket No. 01–6008.**

United States' Court of Appeals, Second Circuit.

Argued: Aug. 27, 2002.

Decided: Jan. 07, 2003.

Lawrence A. Salibra, II, Mayfield Heights, OH (John C. Tillman, Mark D. Kindt, Alcan Aluminum Corporation, Mayfield Heights, OH, of counsel), for Defendant–Appellant.

Lisa E. Jones, Washington, DC (John C. Cruden, Acting Assistant Attorney General, Greer S. Goldman, John T. Stahr, Henry C. Friedman, Steven R. Baer, Peter M. Flynn, Mark Gallagher, U.S. Department of Justice, Washington, DC; Carol Berns, Beverly Kolenberg, U.S. Environmental Protection Agency, Region II, New York, NY, of counsel), for Plaintiff–Appellee United States of America.

David A. Munro, Assistant Attorney General, Albany, NY, for Plaintiff–Appellee State of New York. Martin S. Kaufman, Atlantic Legal Foundation, Inc., New York, NY, filed a brief on behalf of The Atlantic Legal Foundation, Inc. as Amicus Curiae.

Daniel J. Popeo, Washington, DC (Paul D. Kamenar, Washington Legal Foundation, Washington, DC, of counsel), filed a brief on behalf of The Washington Legal Foundation; U.S. Senator Larry E. Craig; U.S. Representatives John E. Peterson, John M. McHugh, and Michael G. Oxley; N.Y. State Senator James W. Wright; N.Y. State Assemblywoman Frances T. Sullivan; John J. Gosek, Mayor of the City of Oswego, New York; N.Y. State Conference of Mayors and Municipal Officials; Chamber of Commerce of the United States of America; National Association of

Manufacturers; National Restaurant Association; National Food Processors Association; Manufacturers Association of Central New York; Operation Oswego County, Inc.; The Business Council of New York State, Inc.; and The Allied Educational Foundation as Amici Curiae.

Before CARDAMONE, STRAUB and KATZMANN, Circuit Judges.

CARDAMONE, Circuit Judge.

Defendant Alcan Aluminum Corporation (Alcan, company or appellant) appeals from a judgment of the United States District Court for the Northern District of New York (McAvoy, J.) entered on November 14, 2000, finding the company jointly and severally liable to plaintiffs United States of America and the State of New York (collectively, the government), for response costs incurred at two hazardous waste sites. It might be said that in writing this opinion we cover ground we have already worked. On a prior occasion we thought that we had thoroughly plowed the field of CERCLA liability, which is the subject of this appeal. But, on reading the briefs of the parties and those filed by amici supporting appellant's arguments urging reversal, we think it is obviously necessary to plow the same field again.

## BACKGROUND

This appeal is the latest round of litigation to result from the efforts of the United States and the State of New York to recover response costs incurred in remedying environmental contamination at two hazardous waste disposal sites in Oswego County, in central New York. This case has had a long litigation history, detailed in numerous judicial opinions.[1] Because we assume the readers' familiarity with the facts and procedural history set out in those opinions, our recounting of what has been earlier explained will be brief.

This litigation began in 1987 when the government filed suit against 83 business entities to recover response costs under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607 (as amended), in connection with the cleanup of an inactive hazardous waste site formerly owned by Pollution Abatement Services of Oswego, Inc. From 1970 to 1977, Pollution Abatement Services operated a waste disposal and treatment facility on 15 acres of land in Oswego County, New York. Chemical wastes from a variety of sources were stored, processed, and disposed of there. Unfortunately, owing to liquid waste spills, waste lagoon overflows, and structural deterioration, the site became contaminated. Heavy metals and polychlorinated biphenyls (PCBs) are two of the several contaminants detected there. In 1976 the government began response and cleanup activities at the Pollution Abatement Services site (PAS).

Alcan, a manufacturer of aluminum sheet and plate products in Oswego, New York, used PAS during the 1970s and arranged for disposal or treatment of 4.6

---

1. *See, e.g., United States v. Alcan Aluminum Corp.,* 755 F.Supp. 531 (N.D.N.Y.1991), *aff'd in part, rev'd in part and remanded,* 990 F.2d 711 (2d Cir.1993); *United States v. Alcan Aluminum Corp.,* Nos. 87–CV–920, 91–CV–1132, 1996 WL 637559 (N.D.N.Y. Oct.28, 1996); *United States v. Alcan Aluminum Corp.,* Nos. 87–CV–920, 91–CV–1132, 1997 WL 727506 (N.D.N.Y. Aug.20, 1997); *United States v. Alcan Aluminum Corp.,* 49 F.Supp.2d 96 (N.D.N.Y.1999); *United States v. Alcan Aluminum Corp.,* 97 F.Supp.2d 248 (N.D.N.Y.2000). Similar issues have been addressed in litigation in the Third Circuit involving identical Alcan waste disposed of at a different site. *See, e.g., United States v. Alcan Aluminum Corp.,* 964 F.2d 252 (3rd Cir.1992), *on remand, United States v. Alcan Aluminum Corp.,* 892 F.Supp. 648 (M.D.Pa.1995), *aff'd,* 96 F.3d 1434 (3d Cir.1996).

million gallons of its waste emulsion at the PAS site. Although this emulsion, which resulted from Alcan's manufacturing processes, consisted mainly of water and oil, it also contained aluminum, cadmium, chromium, copper, lead, and zinc, substances designated as "hazardous" under CERCLA.

Of the 83 entities charged as potentially responsible parties in the government's 1987 lawsuit, only defendant Alcan declined to become a party to the consent decree proposed by the government. On January 15, 1991 the district court granted summary judgment in favor of the government against Alcan, finding Alcan jointly and severally liable for the balance of the government's response costs that had not been reimbursed to it by the other 82 parties to the consent decree. *See United States v. Alcan Aluminum Corp.*, 755 F.Supp. 531 (N.D.N.Y.1991) (*Alcan–PAS* ). On appeal before this Court in 1993, we affirmed the grant of summary judgment with respect to Alcan's liability, but reversed the finding on the joint and several scope of Alcan's liability and remanded to the district court for further proceedings relating·to the potential divisibility of harm and the apportionment of damages. *United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir.1993) (*Alcan* ).

At the time we decided *Alcan* another case, *United States v. Alcan Aluminum Corp.*, 91–CV–1132 (*Alcan–Fulton* ), was pending before the district court. At issue were cleanup costs incurred by the government at a Superfund site in Fulton, New York. The Fulton Terminal operated from 1972 to 1977 as a staging and storage area for hazardous waste scheduled for incineration at PAS. Approximately 70,000 gallons of Alcan's waste emulsion were shipped directly to the Fulton site from Alcan's Oswego manufacturing plant during 1972 and 1973. On December 1, 1993

the district court consolidated *Alcan–PAS* and *Alcan–Fulton.*

Following consolidation of the PAS and Fulton cases, the district court granted the government's summary judgment motion only on the issue of Alcan's liability to the government for its response costs at Fulton. *See United ·States v. Alcan Aluminum Corp.*, 1996 WL 637559 (N.D.N.Y. Oct.28, 1996). The trial court refused to rule on the divisibility of harm and the apportionment of damages with respect to either site at the summary judgment stage. To decide these issues it held a five-day bench trial beginning on October 4, 1999. With the assistance of a court-appointed expert the district court found Alcan jointly and severally liable for response costs at both PAS and Fulton. *See United States v. Alcan Aluminum Corp.*, 97 F.Supp.2d 248 (N.D.N.Y.2000) (*Alcan–Consolidated* ). On the basis of post-trial submissions the district court entered a final judgment in favor of the United States in the amount of $12,201,929.30 and in favor of the State of New York in the amount of $1,422,155.39. Alcan appeals from this judgment. We affirm.

## DISCUSSION

On appeal Alcan challenges essentially every aspect of the district court's many rulings. After carefully reviewing Alcan's arguments we are not persuaded that any of them warrant reversal of the judgment. In the following discussion we address the two we consider the most important issues raised on appeal, namely, the divisibility of the harm at PAS and Fulton and the constitutionality of retroactive CERCLA liability. We think it unnecessary to address the remainder of Alcan's arguments either because they have been sufficiently addressed in the district court's decisions or

because we find them to be wholly without merit.[2]

## I Divisibility of Harm

### A. *Statutory Threshold for Liability*

■ CERCLA § 9607 is a strict liability statute. It imposes liability on "any person who by contract, agreement, or otherwise arranged for disposal or treatment" of hazardous substances "from which there is a release, or a threatened release which causes the incurrence of response costs." § 9607(a)(3) and (4). As we have explained previously, the plain meaning of this provision permits the government to recover response costs from a defendant like Alcan if the government proves "(1) there was a release or threatened release, which (2) caused incurrence of response costs, and (3) ... the defendant generated hazardous waste at the clean-up site." *Alcan*, 990 F.2d at 721. The government is not required to show that a specific defendant's waste caused the incurrence of cleanup costs in order for strict liability to attach to that defendant. *Id.*

At this juncture in the instant litigation it has been established that Alcan is liable to the government under the clear language of CERCLA § 9607 for response costs incurred at both PAS and Fulton. Alcan and the government have stipulated that there was a release of contaminants at PAS, that the government incurred costs in response to this release, and that Alcan generated a waste emulsion that was disposed of at the site. The parties have also stipulated that Alcan's waste emulsion contained cadmium, chromium, copper, lead, and zinc. Alcan does not dispute that

these elements and their respective compounds are identified as "hazardous substances" under CERCLA. The district court—ruling on summary judgment motions of the United States and the State of New York more than a decade ago—found Alcan liable for response costs at PAS. *Alcan–PAS*, 755 F.Supp. 531. We affirmed this ruling when the case came before us the first time. *Alcan*, 990 F.2d at 719–21.

■ With respect to Fulton, Alcan and the government have similarly stipulated that a release occurred there, that this release resulted in the incurrence of government response costs, and that Alcan generated waste that was delivered to the site. Because the Alcan waste emulsion shipped to Fulton was identical to the waste emulsion shipped to PAS—and thus contained the hazardous substances cadmium, chromium, copper, lead, and zinc—Alcan is also liable pursuant to CERCLA § 9607 for the government's response costs incurred at Fulton.

### B. *Divisibility Standard*

A determination holding Alcan liable under CERCLA § 9607 for response costs incurred by the government at PAS and Fulton does not resolve the issue of liability completely. As we explained previously, courts have added a "common law gloss" to the statutory framework of CERCLA. *Alcan*, 990 F.2d at 721. More specifically, we noted that courts "have at once adopted a scheme of joint and several liability but at the same time have limited somewhat the availability of such liability against multiple defendants charged with

**2.** Those arguments are: (1) that expert testimony was improperly admitted; (2) that *res judicata* barred the government from introducing on remand evidence that Alcan's emulsion contained additional hazardous substances; (3) that the district court applied an incorrect standard in deciding the motion for reconsideration; and (4) that the district court erred in not considering its contention that the government's response measures were inconsistent with the National Contingency Plan.

adding hazardous substances to a Superfund site." *Id.* at 721–22 (citing *O'Neil v. Picillo,* 883 F.2d 176, 178–79 (1st Cir.1989) (under some circumstances it is impossible to determine which party caused harm); *United States v. Chem–Dyne Corp.,* 572 F.Supp. 802, 808 (S.D.Ohio 1983) (courts decide liability under common-law principles on a case by case basis)).

The *Restatement (Second) of Torts* § 433A (1965), is frequently cited by those courts endeavoring to determine whether a party that has contributed hazardous substances to a multi-party waste site should be held jointly and severally liable for the remediation costs incurred there. *See, e.g., United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 268–69 (3rd Cir.1992) (*Alcan–Butler* ); *O'Neil,* 883 F.2d at 178; *United States v. Monsanto,* 858 F.2d 160, 171–73 (4th Cir.1988). Indeed, we referred to the Restatement in our previous decision regarding this case. *Alcan,* 990 F.2d at 722. According to the Restatement, where "two or more causes have combined to bring about harm," damages from the harm are to be apportioned among the causes if "there are distinct harms" or "there is a reasonable basis for determining the contribution of each cause to a single harm." § 433A(1) & cmt. 2.

Based upon the common law principles of divisibility and apportionment embodied in the Restatement, we identified in our previous decision precisely how the issue of Alcan's liability was to be resolved. We stated that Alcan may escape joint and several liability "if it either succeeds in proving that its oil emulsion, when mixed with other hazardous wastes, did not contribute to the release and clean-up costs that followed, or contributed at most to only a divisible portion of the harm." *Alcan,* 990 F.2d at 722 (citing *Alcan–Butler,* 964 F.2d at 270).

Our previous decision presented two additional qualifications material to the district court's liability determination. First, although we declared that it would be possible for Alcan to avoid liability entirely, we specified that such would be a "special exception" that would permit Alcan to escape payment only if the company could prove that "its pollutants did not contribute more than background contamination and also cannot concentrate." *Id.* Second, in the event that Alcan did not qualify for the special exception, we ruled that the company could nonetheless "present evidence relevant to establishing divisibility of harm." *Id.* We identified several types of proof that would be relevant to such a showing of divisibility, including "relative toxicity, migratory potential, and synergistic capacities of the hazardous substances at the site." *Id.* (citing *Alcan–Butler,* 964 F.2d at 270 n. 29, 271; *Monsanto,* 858 F.2d at 172 n. 26).

Further, our previous *Alcan* opinion made it clear that Alcan bears the ultimate burden of establishing a reasonable basis for apportioning liability and that the government has no burden of proof with respect to what caused the release of hazardous waste and triggered response costs. 990 F.2d at 722. We also emphasized that apportionment is "an intensely factual determination." *Id.* And, as the Third Circuit observed, the burden to show divisibility is "substantial." *Alcan–Butler,* 964 F.2d at 269.

### C. Alcan *Standard Applied*

Alcan's divisibility burden has grown heavier as this litigation has progressed. In this case's earliest stages Alcan's liability was premised on the presence of metals in the company's waste emulsion, specifically cadmium, chromium, copper, lead and zinc. *See Alcan–PAS,* 755 F.Supp. at 540. In subsequent proceedings the govern-

ment adduced evidence that Alcan's waste emulsion was also contaminated with nickel and PCBs. *See Alcan–Consolidated,* 97 F.Supp.2d at 261–66.

 Although Alcan strongly disputes the district court's findings of fact with respect to the presence of nickel and PCBs in its waste emulsion, we review the district court's findings of fact for clear error and a finding of fact is only "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Having thoroughly reviewed the record, we find that whatever Alcan's assertions of fact-finding error amount to they are not sufficiently persuasive for us to conclude that the district court's findings are mistaken. On the contrary, the record contains ample evidence to support the trial court's finding that Alcan's waste emulsion contained nickel and PCBs. Our review of the trial court's divisibility analysis, *infra,* is predicated on these facts.

 The finding that Alcan's waste emulsion contained PCBs is particularly significant because—as the district court properly ruled—it disqualifies Alcan from escaping all CERCLA liability. *See Alcan–Consolidated,* 97 F.Supp.2d at 268–69. The "special exception" that we created when this case was previously before us was intended to excuse a responsible party from all CERCLA liability only in instances where (1) a party contributed hazardous substances to a site in quantities that did not exceed background levels and (2) the hazardous substances were incapable of concentrating. *See Alcan,* 990 F.2d at 722. We created this exception based on an awareness that some CERCLA hazardous substances, like metals, occur in the environment naturally. The narrow exception

carved out was aimed to shield from liability those entities that have contributed "hazardous" substances—defined as such in the law—to a site but whose contribution—in the absence of EPA thresholds—did not exceed natural background levels, and did not themselves trigger the incurrence of response costs. Because Alcan's emulsion was contaminated with PCBs, which are man-made substances without natural background levels, Alcan cannot escape liability under the special exception this court articulated.

 Even though the company is not permitted to escape liability altogether, we have also recognized that Alcan can nonetheless limit its liability by demonstrating that the harm incurred at PAS or Fulton was divisible. *Alcan,* 990 F.2d at 722. In order to avoid the imposition of joint and several liability under CERCLA, the company must (1) demonstrate that the harm caused by its emulsion was "distinct" from the harm caused by other contributors at PAS and Fulton or (2) proffer a reasonable basis for determining the proportional contribution of its emulsion to what may be conceived of as a single harm at each site. *Restatement (Second) of Torts* § 433A. We had previously stated that proof of "relative toxicity, migratory potential, degree of migration, and synergistic capacit[y]" of the hazardous substances at the site is relevant to establishing the divisibility of harm. *Alcan,* 990 F.2d at 722.

We agree with the district court that Alcan failed to demonstrate that the harm done at PAS and Fulton was divisible. Alcan does not claim that the harm caused by its emulsion was somehow distinct from the harm caused by other hazardous substances at the sites, nor does the company make any real effort to identify the extent to which its waste contributed to a single harm. Rather, both at trial and again on appeal, Alcan simply contends that its

waste emulsion was benign and "really ... just like homogenized milk." It argues therefore that its contribution to the harm and appropriate portion of the damages is readily identifiable; and that its portion is zero. Appellant also presents this argument in an alternative form, analyzing the properties of the constituents of its waste emulsion separately and contending that such analysis similarly supports a conclusion that its emulsion did not contribute to the harm at PAS or Fulton.

In our view appellant's argument on the divisibility of the harm at PAS and Fulton is untenable in two critical respects. First, in light of the district court's conclusion that the waste emulsion contained PCBs, it is unreasonable for Alcan to continue to insist that its waste emulsion was harmless. Second, appellant's analysis—focusing individually on each constituent of its waste—does not provide an acceptable basis for establishing divisibility. CERCLA cases typically involve numerous hazardous substance generators and the disposal of a variety of wastes at a single site. Because the various wastes frequently commingle and interact, "the fact that a single generator's waste would not in itself justify a response is irrelevant ... as this would permit a generator to escape liability where the amount of harm it engendered to the environment was minimal, though it was significant when added to other generators' waste." *Alcan–Butler*, 964 F.2d at 264.

■ The same logic that prevents a polluter from considering the effects of its waste in isolation from the other contaminants at a site also prevents the company from analyzing the constituents of its waste individually without regard to the effects of the "emulsion as a whole." *See Alcan–Consolidated*, 97 F.Supp.2d at 269; *United States v. Alcan Aluminum Corp.*, 892 F.Supp. 648, 651 (M.D.Pa.1995). Be-

cause Alcan, which carried the burden of proof, did not comprehensively and persuasively address the effects of its waste emulsion at PAS and Fulton, it cannot be said that the company either established that the harm caused by its emulsion was distinct or proffered a reasonable basis for dividing the harm and apportioning liability. Stated another way, appellant did not satisfy its substantial burden with respect to divisibility because it failed to address the totality of the impact of its waste at each of the sites; it ignored the likelihood that the cumulative impact of its waste emulsion exceeded the impact of the emulsion's constituents considered individually, and neglected to account for the emulsion's chemical and physical interaction with other hazardous substances already at the site.

■ Our conclusion that Alcan is jointly and severally liable for the harm caused at PAS and Fulton is based upon the district court's finding that

[t]he evidence suggested that Alcan's emulsion was a more aggressive solvent than either water ... or oil ... because, in an emulsion phase, oil and water have a greater capacity to absorb contaminants than either water or oil alone. Alcan's emulsion, therefore, absorbed the contaminants at the sites and facilitated their transport throughout. In so doing, Alcan's emulsion contributed to the breadth of contamination at both PAS and Fulton. In other words, even if the hazardous substances in Alcan's emulsion themselves did not contribute to the response costs at the sites (which the PCBs and nickel did), the emulsion as a whole contributed to both the release and response costs.

*Alcan–Consolidated*, 97 F.Supp.2d at 270. Our holding finds further support by decisions in the Third Circuit that similarly found Alcan jointly and severally liable for

188

cleanup costs incurred at a site where waste emulsion from the company's Oswego, New York facility was discharged. *See United States v. Alcan Aluminum Corp.,* 892 F.Supp. 648, 651 (M.D.Pa.1995), *aff'd,* 96 F.3d 1434 (3d Cir.1996). Having made a determination regarding joint and several liability, we turn to the second issue.

## II Constitutionality of CERCLA

Before this case went to trial on the issue of divisibility, Alcan moved to dismiss the government's complaint pursuant to Fed.R.Civ.P. 12(b)(6) asserting that, in light of the Supreme Court's decision in *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), the retroactive application of CERCLA to Alcan's waste disposal activities constitutes an unconstitutional taking under the Takings Clause of the Fifth Amendment and a violation of the Due Process Clause of the Fourteenth Amendment. The district court denied appellant's motion to dismiss. *See United States v. Alcan Aluminum Corp.,* 49 F.Supp.2d 96 (N.D.N.Y.1999).

In *Eastern Enterprises* a deeply divided Supreme Court struck down retroactive application of the Coal Industry Retiree Health Benefit Act of 1992 (Coal Act), 26 U.S.C. §§ 9701–22. 524 U.S. at 537–38, 118 S.Ct. 2131 (plurality op.), 547–50 (Kennedy, J., concurring in judgment). At issue was a Coal Act allocation formula that assigned the provision of employee retirement benefits, including guaranteed health care benefits established by a series of collective bargaining agreements in the 1970s, to employers that had left the industry before those agreements became operative. Eastern Enterprises challenged the Coal Act on both takings and due process grounds and a plurality of four justices held that the Act, as applied to Eastern, violated the Takings Clause of the Fifth Amendment. *Id.* at 537–38, 118 S.Ct. 2131. A concurring opinion by Jus-

tice Kennedy—that joined the plurality's judgment, but which rejected its takings analysis in favor of a substantive due process approach—supplied the fifth vote necessary to deem the applicable section of the Coal Act unconstitutional under the circumstances of that case. *Id.* at 539–50, 118 S.Ct. 2131 (Kennedy, J., concurring in the judgment and dissenting in part).

Alcan's invocation of the *Eastern Enterprises* decision puts a new spin on an old argument: many potentially responsible parties have challenged the constitutionality of retroactive CERCLA liability. A review of the case law reveals that, historically, this has not been a winning argument. Prior to the decision in *Eastern Enterprises,* a number of courts held that CERCLA applies retroactively, and that such construction did not violate the Constitution. *See, e.g., United States v. Olin Corp.,* 107 F.3d 1506, 1511–15 (11th Cir. 1997); *O'Neil,* 883 F.2d at 183 n. 12; *Monsanto,* 858 F.2d at 173; *United States v. Northeastern Pharm. and Chem. Co.,* 810 F.2d 726 (8th Cir.1986); *Raytheon Co. v. McGraw–Edison Co.,* 979 F.Supp. 858, 863–64 (E.D.Wis.1997); *Cont'l Title Co. v. Peoples Gas Light & Coke Co.,* 959 F.Supp. 893, 893–901 (N.D.Ill.1997); *Ninth Ave. Remedial Group v. Fiberbond Corp.,* 946 F.Supp. 651, 651–64 (N.D.Ind.1996); *Nova Chems., Inc. v. GAF Corp.,* 945 F.Supp. 1098, 1100–05 (E.D.Tenn.1996); *United States v. Kramer,* 757 F.Supp. 397, 428–31 (D.N.J.1991); *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1442–45 (W.D.Mich. 1989).

Given the extensive case law addressing and upholding the constitutionality of retroactive CERCLA liability, the question is whether *Eastern Enterprises* has changed the constitutional terrain and effectively overruled prevailing authority. The district court thought not, *see United States*

*v. Alcan Aluminum Corp.,* 49 F.Supp.2d 96, 99–101, and we do not think so either.

Although a majority in *Eastern Enterprises* was willing to declare the retroactive liability scheme of the Coal Act unconstitutional, no single rationale commanded a majority. Only four justices voted to strike down the statute as unconstitutional based upon a takings clause analysis. *See E. Enter.,* 524 U.S. at 537. The fifth vote required to reach that result came in a concurrence that specifically rejected the plurality's takings analysis, but found the statute unconstitutional based on a violation of substantive due process. *Id.* at 539, 550, 118 S.Ct. 2131. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). This rule only works in instances where "one opinion can meaningfully be regarded as 'narrower' than another—only when one opinion is a logical subset of other, broader opinions," *King v. Palmer,* 950 F.2d 771, 781 (D.C.Cir.1991) (en banc), that is to say, only when that narrow opinion is the common denominator representing the position approved by at least five justices. When it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court. *See Rappa v. New Castle County,* 18 F.3d 1043, 1058 (3rd Cir.1994).

With respect to the Supreme Court's analysis in *Eastern Enterprises,* it is difficult to discern a general principle of law that supports appellant's claim that retroactive CERCLA liability is unconstitutional. Because the substantive due process reasoning presented in Justice Kennedy's concurrence is not a logical subset of the plurality's takings analysis, no "common denominator" can be said to exist among the Court's opinions. The only binding aspect of such a splintered decision is its specific result, and so the authority of *Eastern Enterprises* is confined to its holding that the Coal Act is unconstitutional as applied to Eastern Enterprises.

Significantly, two appellate courts have failed to hold the Coal Act unconstitutional as it applies to other coal mining corporations. *See Anker Energy Corp. v. Consolidation Coal Co.,* 177 F.3d 161, 168 (3d Cir.1999); *Ass'n of Bituminous Contractors, Inc. v. Apfel,* 156 F.3d 1246, 1247 (D.C.Cir.1998). If the holding of *Eastern Enterprises* is so specific that it does not support a finding that the Coal Act's retroactive liability provision is unconstitutional as applied to coal operators not in the same position as Eastern Enterprises, then it may not be said to stand for the much broader proposition that the application of retroactive CERCLA liability to Alcan runs afoul of the Constitution.

As noted, courts considering the issue prior to the *Eastern Enterprises* decision consistently agreed that the retroactive liability scheme of CERCLA is constitutional. Like this Court, several other courts have been asked to reconsider this precedent in light of *Eastern Enterprises.* Those courts have uniformly held that CERCLA continues to pass constitutional muster. *See United States v. Dico, Inc.,* 266 F.3d 864, 879–80 (8th Cir.2001); *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.,* 240 F.3d 534, 550–53 (6th Cir.2001); *United States v. Manzo,* 182 F.Supp.2d 385, 407–08 (D.N.J.2000); *Combined*

*Prop./Greenbriar Ltd. P'ship v. Morrow,* 58 F.Supp.2d 675, 677–82 (E.D.Va.1999); *United States v. Vertac Chem. Corp.,* 33 F.Supp.2d 769, 784–85 (E.D.Ark.1998), *rev'd on other grounds sub nom. United States v. Hercules, Inc.,* 247 F.3d 706 (8th Cir.2001).

We are in accord with this consistent authority that both pre- and post-dates *Eastern Enterprises.* As a consequence, holding Alcan jointly and severally liable under CERCLA for the cleanup costs incurred at PAS and Fulton does not result in an unconstitutional taking adverse to Alcan, or a deprivation of its right to due process.

## CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.