TRAGER, District Judge,
dissenting:
I respectfully dissent. My colleagues claim to follow this Court’s previous decision in United States v. Carter, 489 F.3d 528 (2d Cir.2007), and by extension Justice Kennedy’s concurring opinion in Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) — both of which require the district court to determine an interrogating officer’s subjective intent for failing to warn a suspect of his Miranda rights. But the novel test crafted by the majority, which examines whether the interrogating officer’s reasons would be deemed “legitimate” under Miranda and its progeny, instead makes subjective evidence virtually irrelevant in nearly every two-step interrogation case. As such, the majority’s decision undermines Justice Kennedy’s controlling opinion in Seibert and replaces it with the objective “effectiveness” test proposed by the non-controlling Seibert plurality opinion.
A more faithful application of Justice Kennedy’s Seibert concurrence requires a conclusion that Capers’ post-warning statements are admissible based on the district court’s factual finding — made after a thorough review of all of the evidence— that Inspector Hoti did not deliberately utilize a two-step interrogation technique. The majority improperly undertakes a de novo review of the district court’s factual findings rather than reviewing them using the traditional “clearly erroneous” standard. The majority suggests that a de novo review is made necessary by its purported construction of a novel “totality of the circumstances” test for determining whether an interrogating officer purposefully utilized a two-step interrogation technique. But this new test is entirely consistent with the one used by the district court to find that Inspector Hoti did not deliberately use such a technique, and therefore *486 provides no basis to review the district court’s factual findings de novo.
Moreover, even if de novo review is appropriate in this case, I would still disagree with the majority’s decision to suppress the post-warning confession because the government has met its burden of proving by a preponderance of the evidence that Inspector Hoti did not intend to utilize a two-step interrogation technique. To the extent that the majority finds that any of the district court’s factual findings were clearly erroneous, the majority misapplies the clearly erroneous standard by making credibility determinations regarding witness testimony. Such credibility determinations, while never appropriate for an appellate court to make, are particularly inappropriate where, as here, there is nothing in Inspector Hoti’s testimony that is either contradicted by the record evidence or inherently unbelievable.
Because a proper review of all the evidence (including the subjective evidence) establishes that Inspector Hoti did not deliberately utilize a two-step interrogation technique to circumvent Miranda, the voluntary statements made in response to the post-warning interrogation should not be suppressed.
I
This case involves a suspect who made a self-incriminating statement in response to questions from an interrogating officer pri- or to being warned of his Miranda rights, and then later made additional self-incriminating statement after being warned of his Miranda rights. The Supreme Court has twice considered cases of this nature — first in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), and again in Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).
In Oregon v. Elstad, two officers went to the home of Michael Elstad — an individual they suspected of robbing a neighbor’s house — with a warrant for his arrest. While there, one of the officers had a brief conversation with the suspect without warning him of his Miranda rights. 470 U.S. at 300-01, 105 S.Ct. 1285. The officer apparently failed to issue the warnings because it was not clear to him whether the suspect was in custody at the time. Id. at 315, 105 S.Ct. 1285. During the conversation, the officer asked the suspect whether he knew the individual whose house had been robbed, to which the suspect responded by making an incriminating statement. Following that statement, the suspect was arrested and transported to the station house. Approximately one hour later, the same two officers who had arrested the suspect at his home advised him of his Miranda rights, and then proceeded to take a full statement from him. Id. at 301-02, 105 S.Ct. 1285.
The Supreme Court found that, although the initial unwarned statement was inadmissible, the later postwarning statement was admissible because it was voluntarily made. According to the Court, “[tjhough Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.” Id. at 309, 105 S.Ct. 1285.
The issue of pre- and post-warning confessions again came before the Supreme Court in Missouri v. Seibert. In that case, the Court was confronted with the intentional use of a two-step interrogation technique where officers in the Rolla, Missouri police department had been trained to “withhold[ ] Miranda warnings until after interrogating and drawing out a confession,” Seibert, 542 U.S. at 609, 124 S.Ct. 2601 (plurality opinion), in order to “get a confession the suspect would not make if *487 he understood his rights at the outset,” id. at 613, 124 S.Ct. 2601. The Court produced several opinions, none of which garnered the support of a majority of the Justices. Writing for four Justices, Justice Souter found that the post-warning statements were inadmissible (even though they were voluntarily made within the meaning of Elstad) because “the question-first tactic effectively threatens to thwart Miranda’s purpose of reducing the risk that a coerced confession would be admitted, and because the facts here do not reasonably support a conclusion that the warnings given could have served their purpose....” Id. at 617, 124 S.Ct. 2601.
Justice Souter’s plurality opinion sets forth an objective test from the perspective of the suspect being interrogated, whereby a court deciding the admissibility of post-warning statements that followed inadmissible pre-warning statements should determine “whether it would be reasonable to find that in these circumstances the warnings could function ‘effectively’ as Miranda requires.” Id. at 611— 612, 124 S.Ct. 2601. The plurality described “effectiveness” as “[whether] the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture” and “[whether] they reasonably convey that he could choose to stop talking even if he had talked earlier.” Id. According to the plurality, a court should perform this inquiry in all cases where the admissibility of post-warning statements is challenged based on the lingering effects of an inadmissible pre-warning interrogation. Id. This test would be performed in addition to the Elstad inquiry into whether the statements were knowingly and voluntarily made.
The plurality then listed several objective factors that a court should consider when determining whether the warning could function effectively. These factors included: (1) the completeness and detail of the questions and answers in the first round of interrogation, (2) the overlapping content of the two statements, (3) the timing and setting of the first and second, (4) the continuity of police personnel, and (5) the degree to which the interrogator’s questions treated the second round as continuous with the first. Id. at 615, 124 S.Ct. 2601.
Justice Kennedy, writing separately in an opinion joined by Justice Breyer, agreed with the plurality that the post-warning statements should be suppressed, but suggested a different test for determining their admissibility. In contrast to the plurality’s objective test, Justice Kennedy — focusing more on the conduct of law enforcement — proposed a “narrower test applicable only in the infrequent case, such as we have here, in which the two-step interrogation technique was used in a calculated way to undermine the Miranda warning.” Id. at 622, 124 S.Ct. 2601 (Kennedy, J., concurring). According to Justice Kennedy: “When an interrogator uses this deliberate, two-step strategy, predicated upon violating Miranda during an extended interview, postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps.” Id. at 621, 124 S.Ct. 2601. If the court finds that the interrogator did not deliberately use a two-step strategy, then “the admissibility of post-warning statements should continue to be governed by the principles of Elstad.” Id. at 622, 124 S.Ct. 2601.
In reaching this conclusion, Justice Kennedy rejected the majority’s purely objective test, which was to be applied in cases of both intentional and unintentional two-stage interrogations, as “cut[ting] too broadly.” Id. at 621-22, 124 S.Ct. 2601. Instead, Justice Kennedy felt that a court should only consider whether the Miranda *488 warning was effective — or, in Justice Kennedy’s words, whether “curative measures are taken before the postwarning statements are made” — in cases where the interrogator intentionally used the two-step technique. Id. at 622, 124 S.Ct. 2601. In cases where the interrogator did not intentionally use a two-step technique to undermine Miranda, Justice Kennedy felt that the “effectiveness” test should not be applied. Id.
Despite the fragmented nature of the decisions in Seibert, both the Supreme Court’s and this Court’s precedents make clear that Justice Kennedy’s concurring opinion controls. “When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, ‘the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.’ ” Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). In Seibert, Justice Kennedy’s opinion, which provided the fifth vote for suppressing the self-incriminating statements made by the defendant, controls because it provides a narrower exception to Elstad than the test proposed by the plurality. Whereas the plurality suggested that all cases where a two-step interrogation took place should be reviewed for the objective effectiveness of the Miranda warning, Justice Kennedy’s concurring opinion holds that such a review should only take place in cases where the interrogator intentionally used a two-step technique to circumvent Miranda. The tests suggested by the plurality and Justice Kennedy diverge in cases where the interrogator unintentionally performed a two-step interrogation. In those cases, Justice Kennedy’s concurring opinion states that the Elstad inquiry into whether statements were “knowingly and voluntarily made” still controls, whereas the plurality opinion states that the newly-crafted “effectiveness” test should also be applied. Because the test stated in Justice Kennedy’s concurring opinion applies the “effectiveness” inquiry — which was approved for use in at least some circumstances by a majority of the Court — to a narrower set of cases than the test stated in the plurality opinion, Marks dictates that it be considered the controlling opinion from Seibert.[1]
Even more importantly for our purposes, this Court has already held that Justice Kennedy’s concurring opinion in Seibert is the controlling opinion. In United States v. Carter, 489 F.3d 528 (2d Cir.2007), decided after the district court issued its decision in the case at bar, this Court stated: “We now join our sister circuits in holding that Seibert lays out an exception to Elstad for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning *489 confession.” Id. at 536. Although the district court did not have the benefit of guidance from this Court when it considered the question of which opinion from Seibert controls, Carter has since definitively answered that question.
My colleagues do not dispute that, post-Carter, Justice Kennedy’s concurring opinion in Seibert clearly controls in this circuit (as well as most other circuits that have decided the issue[2]). The majority writes: “Under Carter, we must address whether the officers employed a ‘deliberate two-step strategy, predicated upon violating Miranda during an extended interview,’ and if so, whether ‘specific, curative steps’ were taken to obviate the violation that occurred.” Majority Op. at 477 (quoting Seibert, 542 U.S. at 621, 124 S.Ct. 2601 (Kennedy, J., concurring)).
Having recognized that Justice Kennedy’s concurring opinion in Seibert controls, this case should be easily resolved based entirely on the district court’s factual findings. Instead, the majority goes astray by reviewing the district court’s factual findings de novo,[3] incorrectly applying the applicable test on de novo review, and doing so in a way that undermines Justice Kennedy’s controlling Seibert opinion.
In Judge McKenna’s thorough and well-reasoned opinion below, he stated that “[tjhere is no evidence ... that Inspector Hoti had the specific intent to use the two-stage questioning technique with the purpose of first obtaining unwarned incriminating statements in order, in a subsequent warned interrogation, to obtain similar incriminating statements.” United States v. Capers, No. 06-CR-266, 2007 WL 959300, at * 12 (S.D.N.Y. Mar. 29, 2007). Based on his finding of a lack of intent, Judge McKenna concluded: “[I]f Justice Kennedy’s Seibert concurrence represented the law, suppression would be denied.” Id. at *15 n. 17. Under the test established in Justice Kennedy’s Seibert opinion, the above factual finding is sufficient to determine that suppression should be denied, as the district court rightly noted.
The district court’s factual findings made at a suppression hearing should not be overturned unless they are found to be clearly erroneous. United States v. Ansaldi, 372 F.3d 118, 129 (2d Cir.2004). “The trial court is in a unique position to evaluate witnesses’ credibility,” United States v. Davis, 967 F.2d 84, 86 (2d Cir.1992), and is thereby better positioned than an appellate court to make the necessary factual findings.
In this case, the district court considered the testimony from the interrogating officer — Inspector Hoti — and determined that he testified credibly with regard to his reasons for not giving defendant Miranda warnings prior to questioning him at the Bronx DMU when he said:
Again, the importance to me in understanding this facility, I did not want to *490 lose any of the evidence, I did not want to lose any of the evidence in the case. Obviously the importance of it, to recover that evidence as quickly as I can. Secondly, I have another individual that’s — yes, he’s cuffed outside of the office, Mr. Lopez. If I could determine fairly quickly that, in fact, he had no role to play in that crime, I need to take those cuffs off and basically cut him loose.
Capers, 2007 WL 959300, at *3 (quoting Tr. 35). The district court found that this testimony supported a finding that Inspector Hoti did not deliberately utilize a two-step interrogation technique, id. at *12, and further determined that the objective evidence in no way contradicted his testimony, id. (“There is no evidence ... that Inspector Hoti had the specific intent to use the two-stage questioning technique with the purpose of first obtaining unwarned incriminating statements in order, in a subsequent warned interrogation, to obtain similar incriminating statements.”). Based on all of the available evidence, the district court found that Inspector Hoti did not deliberately utilize a two-step interrogation technique to circumvent Miranda.
Even my colleagues in the majority are unwilling to say that this factual finding is clearly erroneous.[4] If the majority had reviewed the district court’s decision (including its ultimate conclusion that Inspector Hoti did not intentionally utilize a two-step interrogation technique) using the proper “clearly erroneous” standard, then the outcome under Justice Kennedy’s test from Seibert would have been clear — -suppression would have been denied because the interrogator did not deliberately utilize a two-step interrogation technique to circumvent Miranda.
But instead of reviewing the district court’s factual findings for clear error, the majority improperly chooses to review the court’s factual findings de novo, replacing the district court’s credibility determinations with its own and re-weighing the evidence based on information obtained entirely from the written record.
The majority justifies its reexamination of the district court’s factual findings by claiming that it is “constructing a method to determine deliberateness,” Majority Op. at 478, namely, establishing which party bears the burden of proving deliberateness, and what that burden is. But even accepting that the majority’s opinion clarifies aspects of a test that were previously unsettled in this circuit, there is still no basis for ignoring the district court’s thorough fact-finding on this issue because the test articulated by the majority is the exact same test that was applied by the district court.
The majority states: “[W]e join our sister circuits in concluding that a court should review the totality of the objective and subjective evidence surrounding the interrogations in order to determine deliberateness, with a recognition that in most instances the inquiry will rely heavily, if not entirely, upon objective evidence.” Majority Op. at 479. It goes on to state: “[W]e hold that the burden rests on the prosecution to disprove deliberateness,” id. at 479, and that the burden is that of a *491 preponderance of the evidence, id. at 479-80.
The test used by the district court to determine whether Inspector Hoti utilized a deliberate two-step interrogation technique to circumvent Miranda is entirely consistent with each of the above holdings by the majority. In its written opinion, the district court examined “the totality of the circumstances” in making its factual determination regarding deliberateness, considering both subjective and objective evidence that it found relevant to determining whether Inspector Hoti deliberately utilized a two-step interrogation technique. Capers, 2007 WL 959300, at *11.[5]
Although the district court does not explicitly state in its opinion which side bears the burden of proving deliberateness, there is no doubt that the district court required the government to prove deliberateness by a preponderance of the evidence. At oral argument in the district court, Judge McKenna asked the parties, “[A]m I correct in assuming that the general rule applies, and that is, since this is a motion to suppress statements, that the government has the burden of proof by a preponderance,” (J.A. at 349), to which the attorney for the government responded, “That’s correct, your Honor.” (J.A. at 350).[6]
II
Even if de novo review of the district court’s factual determination regarding deliberateness were appropriate in this case, I would still be unable to agree with the majority’s finding that Inspector Hoti deliberately utilized a two-step interrogation technique to circumvent Miranda.
The test used by the majority to determine whether Inspector Hoti deliberately utilized a two-step interrogation technique effectively undermines the subjective test established by Justice Kennedy in his concurring opinion in Seibert (and adopted by this Court in Carter) because it ignores subjective evidence showing that the inspector did not deliberately utilize a two-step technique, and instead relies exclusively on the objective factors listed in the non-controlling Seibert plurality opinion.[7] In reviewing the evidence of whether Inspector Hoti utilized a two-step interroga *492 tion technique, the majority gives absolutely no weight to the inspector’s testimony that his reasons for not immediately advising Capers of his Miranda rights were to prevent the loss or concealment of the currency and money orders that the Express Mail envelope contained and to ascertain whether Lopez was involved in the crime so that he could be released if necessary. Majority Op. at 480-81; see also Capers, 2007 WL 959300, at *12 & n. 13 (citing Tr. 32 & 35).
Despite the fact that Judge McKenna— who witnessed Inspector Hoti’s testimony and was therefore better able to assess his credibility — found that the inspector’s testimony was credible, the majority chooses to give it no weight whatsoever because, according to the majority, Hoti did not articulate a legitimate exception to Miranda. Notably, the majority states:
Neither of these reasons [given by Inspector Hoti] justifies delaying a Miranda warning once it is obvious that a suspect is in custody. There is no exception to Miranda that allows a delay in giving Miranda warnings in order to preserve evanescent evidence. Neither is there an exception to Miranda that permits delaying the warnings in order to ascertain whether a suspected eo-conspirator may be entitled to release.
Majority Op. at 480.
Even assuming the majority is correct in finding that Inspector Hoti’s testimony did not express “legitimate” reasons for not immediately advising Capers of his Miranda rights, that conclusion would be of little import to the inquiry at hand— whether he deliberately utilized a two-step interrogation technique. Under the test established in Justice Kennedy’s concurring opinion in Seibert, the operative question is not whether Inspector Hoti had a legitimate reason for questioning Capers prior to warning him of his Miranda rights, but instead whether his reason for doing so was to deliberately utilize a two-step interrogation procedure with the intended purpose of undermining Miranda. In an opinion joined by retired Justice David Souter sitting by designation, the First Circuit recognized as much and held that an interrogation for the purposes of recovering evidence did not constitute a deliberate two-step strategy because the initial interrogation was “aimed primarily at securing the [stolen] weapon” that the police were searching for. United States v. Jackson, 608 F.3d 100, 104 (1st Cir.2010) (Boudin, J.). In this light, there is nothing suspicious about the reasons put forth by Inspector Hoti for why he did not advise Capers of his Miranda rights prior to interrogating him. Both reasons, under the circumstances, were quite credible.
By importing the tests establishing legitimate exceptions to Miranda into the factual test for whether an interrogating officer deliberately utilized a two-step technique, the majority completely undermines the subjective test that lies at the heart of Justice Kennedy’s Seibert opinion. The Elstad/Seibert line of cases is only relevant when statements made in response to the initial questioning are excluded by Miranda. If district courts are now required to disregard subjective testimony about an interrogator’s reasons for not warning a suspect of his Miranda rights whenever pre-warning statements would be excluded by Miranda, then courts considering two-step interrogations will be forced to disregard whatever subjective evidence may exist.[8]
*493 Under the majority’s test, in almost all cases where a pre-warning confession is suppressed due to a violation of the suspect’s Miranda rights, a subsequent post-warning confession will also be suppressed because the interrogating officer will be unable to articulate a “legitimate” reason for not advising the suspect of his or her Miranda rights prior to the initial interrogation. Under this approach, there would almost never be an occasion when Justice Kennedy’s approach would be applicable.[9]
The inevitability of this result is made clear when the majority states that “[t]he only legitimate reason to delay intentionally a Miranda warning until after a custodial interrogation has begun is to protect the safety of the arresting officers or the public,” Majority Op. at 481 (citing United States v. Newton, 369 F.3d 659, 677 (2d Cir.2004)), because this exception could never apply to two-step interrogation cases. The Elstad/Seibert inquiry only comes into play when pre-warning statements are excluded by Miranda. In cases where the public safety exception applies, even those pre-warning statements are admissible, making the entire Elstad/Seibert inquiry unnecessary. If the public safety exception were the only “legitimate” reason that an officer could give for failing to advise a suspect of his Miranda rights prior to interrogating him — and thus the only reason that would allow a court to consider the officer’s testimony — then it would never be proper for courts to consider an interrogating officer’s testimony in two-step interrogation cases. This would entirely undermine the subjective test established in Justice Kennedy’s Seibert opinion.
Moreover, even if the legitimacy of an interrogating officer’s actions were an appropriate consideration for determining whether the officer intentionally used a two-step technique to undermine Miranda, there is nothing illegitimate about the reasons put forth by Inspector Hoti. All of the evidence sought by Inspector Hoti is beyond the scope of the Miranda protection. Although Capers’ pre-warning statements would not have been admissible against him in a criminal proceeding, Inspector Hoti testified that he was not interrogating Capers in order to procure a confession. Instead, he was seeking physical evidence (the currency and money orders) and information about Capers’ co-conspirator, Lopez. An interrogating officer’s failure to advise a suspect of his Miranda rights does not require suppression of the physical fruits of the suspect’s unwarned statements. See United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, *494 159 L.Ed.2d 667 (2004) (holding that physical evidence obtained as a result of unwarned statements is not excluded by Miranda); United States v. Morales, 788 F.2d 883, 886 (2d Cir.1986) (“The Miranda presumption of coercion has not barred the use of unwarned, voluntary statements ... to locate non-testimonial evidence.... ”). And Miranda, which protects a suspect’s Fifth Amendment right against self-incrimination, does not protect suspects from making statements that incriminate other individuals. As such, there was nothing per se illegitimate about asking Capers whether Lopez was involved in the criminal activity or attempting to determine the location of physical evidence.
Ill
In addition to improperly finding that Inspector Hoti’s proffered reasons for delaying the Miranda warning should not be considered because they lack legitimacy, the majority also finds that those reasons lack credibility when considered in light of the objective evidence. Majority Op. at 481-82. Although this finding appears to be entirely superfluous to the outcome of this appeal based on the majority’s novel “legitimacy” test, see supra note 7, to the extent it is at all relevant to result the majority reaches, it is an improper application of the clearly erroneous standard.
While a district court’s findings of fact may be overturned if this Court determines that they are clearly erroneous, this Court is not entitled to overturn a district court’s assessment of the credibility of a witness — an assessment which is the “providence of the district court.” United States v. Maldonado-Rivera, 922 F.2d 934, 972 (2d Cir.1990); cf. United States v. Raddatz, 447 U.S. 667, 681 n. 7, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (“[I]t is unlikely that a district judge would reject a magistrate’s proposed findings on credibility when those findings are dispositive and substitute the judge’s own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions .... ”). Furthermore, “[wjhere there are two permissible views of the evidence, the court’s choice between them cannot be deemed clearly erroneous.” Maldonado-Rivera, 922 F.2d at 972 (citing Anderson v. City of Bessemer City, N. C., 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). These rules are not merely based on the belief that the district court is better positioned to make determinations of credibility (as well as more experienced at making such determinations), but also on prudential concerns that “[duplication of the trial judge’s efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources.” Anderson, 470 U.S. at 574-75, 105 S.Ct. 1504.
The majority disregards the above limits on the role of an appellate court, choosing instead to reject the credibility determinations made by the district court that it considers “dubious.” While such a review of the district court’s credibility determinations is never appropriate, it is particularly problematic in this case where there is nothing in Inspector Hoti’s testimony that is either contradicted by the record evidence or inherently unbelievable. As such, the reasons given by the majority are insufficient to satisfy the clearly erroneous standard, which requires this Court to have a “firm conviction that a mistake has been committed.” United States v. Iodice, 525 F.3d 179, 185 (2d Cir.2008).
With regard to Inspector Hoti’s claim that he had to determine whether Lopez was involved in the scheme, and if he was not, release him, the majority states that *495 it is dubious that Inspector Hoti would have simply released Lopez had Capers said that Lopez had nothing to do with the theft. Majority Op. at 481-82. But nothing in Inspector Hoti’s testimony suggests that he would have taken Capers’ statements at face value and released Lopez based entirely on those statements. Instead, Inspector Hoti’s testimony demonstrates that he knew very little about Lopez when he took him into custody. Although Capers was a suspect prior to the day of his arrest, Inspector Hoti had never seen Lopez and knew nothing about him prior to that day. (J.A. 62-63.) And although Inspector Hoti certainly had probable cause to believe that Lopez was involved in the incident based on evidence acquired the day of the arrest, that evidence consisted entirely of a glance from Lopez towards the bulk mail carrier (“BMC”) containing the Express Mail envelopes and Lopez’s presence in the truck with Capers when the alarm went off. (J.A. 62, 64-65.) It would have been perfectly rational for Inspector Hoti to want to confirm his suspicion that Lopez was involved in the theft, especially if it was true that Inspector Hoti knew absolutely nothing about Lopez prior to observing him on the day of the incident.
With regard to Inspector Hoti’s claim that he did not want to lose the money orders, the majority finds that this claim is “belied by the testimony of the arresting officers that Capers and Lopez were detained almost directly after the envelope alarm sounded and were found either still in the storage container, or in that immediate vicinity.” Majority Op. at 482. But the majority fails to explain how those facts are sufficient to leave this Court with “the firm conviction” that Inspector Hoti did not actually fear losing the money orders.[10] When the alarm went off, both Capers and Lopez were out of Inspector Hoti’s line of sight, hidden behind a large BMC in the back of a mail transportation truck. (J.A. 64-65.) Inspector Hoti then had to slide down a ladder, exit the lookout where he had been observing Capers, and run around the building to the area where Capers and Lopez were loading the truck before he could apprehend Capers and Lopez. (J.A. 67.) After Inspectors Hoti and Chow handcuffed Capers and Lopez, the inspectors entered the back of the truck where they were able to find the Express Mail envelopes, but not the money orders. (J.A. 67-68.) At that point, Inspector Hoti took Capers to the supervisor’s office so that he could ensure that Capers was not able to hide the money orders — which were both evidence and the equivalent of cash — somewhere in the facility. Given the circumstances, it would have been entirely rational for Inspector Hoti to segregate Capers in the supervisor’s office and attempt to retrieve the money orders as soon as possible.[11]
Because Inspector Hoti’s testimony is entirely plausible (and certainly not so implausible as to raise a “firm conviction that a mistake has been committed”), it was not clear error for the district court to find that the government met its burden of proving by a preponderance of the evidence that Inspector Hoti did not deliberately utilize a two-step interrogation *496 technique to circumvent Miranda. Accordingly, Capers’ voluntary post-warning statements should not be excluded, and the district court’s decision to exclude the statements should be reversed.[12]
For the foregoing reasons, I respectfully dissent.

. The applicability of Maries to Seibert is unaffected by this Court’s opinion in United States v. Alcan Aluminum Corp., 315 F.3d 179 (2d Cir.2003). That case found that Marks was inapplicable to the Supreme Court’s splintered decision in Eastern Enterprises v. Apfel, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), because Justice Kennedy’s concurrence was "not a logical subset" of the plurality's analysis. Alcan Aluminum Corp., 315 F.3d at 189. In Eastern Enterprises, a four-Justice plurality found that the Coal Industry Retiree Health Benefits Act (“Coal Act”) violated the Takings Clause of the Fifth Amendment. 524 U.S. at 537-38, 118 S.Ct. 2131 (plurality opinion). Justice Kennedy joined in the result reached by the plurality but rejected its Takings Clause analysis, finding instead that the Coal Act violated substantive due process. Id. at 539-50, 118 S.Ct. 2131. Unlike in Eastern Enterprises, where the plurality opinion and the concurring opinion reached the same result on entirely separate grounds, the concurring opinion in Seibert adopted the same "effectiveness” test as the Seibert plurality, but held that the test should be applied to a narrower subset of cases than the plurality would have held.

. As the majority recognizes in its opinion, this view has been adopted by the Third, Fifth, Eighth, Ninth and Eleventh Circuits. Majority Op. at 476. But see United States v. Heron, 564 F.3d 879, 884-85 (7th Cir.2009) (concluding that the Marks rule is inapplicable to Seibert because “Justice Kennedy's intent-based test was rejected by both the plurality decision and the dissent”).

. Although the majority does not explicitly state that it is applying a de novo standard of review to the district court's factual findings, its analysis clearly demonstrates that it is doing so. See Majority Op. at 480 (“Looking to the totality of the circumstances in the case before us, the evidence proffered by the government to show that Capers was not the subject of a deliberate, two-step interrogation is outweighed by subjective and objective evidence to the contrary.”); see also id. at 480 ("Objective evidence also leads us to conclude that the Government has failed to meet its burden....”).

. Although the majority states that the "district court’s [subsidiary] finding that there was 'no evidence’ of a deliberate, two-step interrogation tactic at work was clear error,” Majority Op. at 482, it notably does not find that the district court’s ultimate factual finding that Inspector Hoti did not intend to use a two-step interrogation technique to circumvent Miranda was clear error. Instead, it reviews the evidence in the record de novo and finds that "the government has not produced sufficient objective evidence to meet its burden.” Id. at 484; see also supra note 3.

. Even though the district court found that the objective evidence did not support defendant's contention that Inspector Hoti deliberately used a two-step interrogation technique, it nonetheless considered all of the objective factors articulated by the Seibert plurality in reaching that conclusion. See Capers, 2007 WL 959300, at *13-15. Therefore, the majority’s claim that the district court “ignored all the ... relevant evidence” besides the testimony of the arresting officers, Majority Op. at 482, is clearly contradicted by the district court’s written opinion.

. The district court also clearly applied this preponderance standard in its written opinion. As stated above, the district court found that none of the evidence in the record contradicted Inspector Hoti’s testimony that he did not intend to use a two-step technique to circumvent Miranda. See supra at 489-90.

. The majority claims that its “analysis considers the subjective evidence adduced at the suppression hearing ... as instructive but not automatically dispositive,” Majority Op. at 482, but finds that, in this case, Inspector Hoti's testimony may be disregarded because it lacks credibility, id. But even if the majority had found that Inspector Hoti’s testimony was credible, the majority would still have refused to consider the testimony because it deems Inspector Hoti's stated reasons as being illegitimate. Id. at 480-81. Notwithstanding the majority's proclamations to the contrary, it is clear that the "legitimacy” test adopted by the majority would malte subjective evidence irrelevant in almost every two- *492 step interrogation inquiry. See infra at 492-93.

. The majority suggests that subjective evidence may rarely exist in cases involving two-step interrogations. Majority Op. at 479-80 ("[I]n most instances the inquiry will rely heavily, if not entirely, upon objective evidence.”). But even if that were so, the poten *493 tial scarcity of subjective evidence provides no justification for ignoring relevant subjective evidence when it does exist.

. Although the majority's test could still find that a two-step technique was not intentionally used when the pre-warning interrogation was performed by a different officer than the post-warning interrogation, and the second officer was not aware of the initial interrogation, see, e.g., Carter, 489 F.3d at 536, Justice Kennedy's concurring opinion makes clear that, even when the same officer performs both the pre- and post-warning interrogations, a court may find that the illegitimate pre-warning interrogation was not done for the purpose of utilizing a two-step technique to circumvent Miranda. Seibert, 542 U.S. at 620, 124 S.Ct. 2601 (Kennedy, J., concurring) (“[lit would be extravagant to treat the presence of one statement that cannot be admitted under Miranda as sufficient reason to prohibit subsequent statements preceded by a proper warning.”). Elstad is an example of such a case — the pre-warning interrogation was performed by an officer who also participated in the post-warning confession. See Elstad, 470 U.S. at 301-02, 105 S.Ct. 1285. Yet Justice Kennedy found that the Court’s decision not to exclude the post-warning statements in Elstad "was correct in its reasoning and its result.” Seibert, 542 U.S. at 620, 124 S.Ct. 2601 (Kennedy, J., concurring).

. Even if Inspector Hoti’s fear of losing the money orders was irrational, a finding that he did, in fact, hold that irrational belief would still be sufficient to show that he did not intend to utilize a two-step interrogation technique.

. It should be noted that Inspector Hoti could have retrieved the money orders simply by performing a search incident to arrest, and such a search would not have run afoul of any of Capers' constitutional rights. Nonetheless, this would not have resolved the issue of Lopez’s involvement.

. Because Inspector Hoti did not deliberately utilize a two-step interrogation technique, it is unnecessary to decide whether "curative measures [were] taken before the postwarning statements [were] made." Seibert, 542 U.S. at 622, 124 S.Ct. 2601 (Kennedy, J., concurring).